

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ERIC KITTLER, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) No. 03 C 6992 |
| CITY OF CHICAGO, et al., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant City of Chicago's ("City") motion for summary judgment on Count III of Plaintiff Eric Kittler's ("Kittler") Amended Complaint. This matter is also before the court on Defendants Steven Buglio's ("Buglio"), Wayne Bunch's ("Bunch"), Judy Castellanos's ("Castellanos"), Steven Konow's ("Konow"), Sergio Rajkovich's ("Rajkovich"), Thermon Royster's ("Royster"), and Leonard Rolston's ("Rolston") (collectively referred to as "Detectives") motion for summary judgment on Counts II and IV. This matter is also before the court on Defendants City of Chicago and Detectives' joint motion to strike. For the reasons stated below, we grant the motions for summary judgment and deny the motion to strike.

## BACKGROUND

Kittler was arrested at approximately 5:45 p.m. on March 27, 1997, in connection with an armed robbery and murder. Kittler was fifteen years old at the time of the arrest. Kittler claims that he was taken to the police station and placed in an interrogation room for approximately twelve hours. During that time, Kittler alleges that various Detectives continuously interrogated him and that he was deprived of sleep and food. According to Kittler, the Detectives screamed at him and threatened him with physical harm during the interrogation, and attempted to intimidate him to get him to make a confession. Kittler also claims that he was denied access to his mother, who was at the station attempting to see him. Kittler claims that all of the above actions by the Detectives were part of a conspiracy to get Kittler to confess. Kittler alleges that Assistant State's Attorney Kent Sinson joined in the interrogations in the late evening hours. In the early morning hours of March 28, 2001, Kittler signed a statement prepared by Sinson, implicating Kittler in the murder of Abdel Khalil ("Khalil"). Kittler also alleges that the Detectives brought in his mother only when he was about to sign the statement, and that at that time, Detectives placed a can of soda and a bag of potato chips in front of him.

During Kittler's state criminal proceedings, he filed a motion to quash arrest and suppress evidence claiming that there was no probable cause to arrest him, and a motion to suppress statements claiming that his confession was coerced. The state trial court denied both motions. Kittler was prosecuted and convicted of first-degree

murder. On March 24, 2001, Kittler's conviction was overturned on appeal in state court and the case was remanded to the trial court. The basis for the reversal was that the Appellate Court found no probable cause for Kittler's arrest. Kittler was retried and acquitted in March 2002.

In the instant action, Kittler claims that the Defendants suppressed evidence and used false evidence in order to secure his conviction in state court. For example, Kittler alleged that Rajkovich interviewed Kittler's codefendant Thomas Harvey ("Harvey") before Kittler's arrest, and subjected Harvey to a polygraph test. Kittler asserts that during the polygraph test, Harvey implicated Harvey's friend Eric Orr in the murder, and said that he lived at the same address as Kittler. Kittler further alleges, however, that the police report from this interview only stated that an Eric was implicated, without mentioning Eric Orr's last name. Kittler also alleges that an Eric Orr lived less than one block from Kittler's address, and that Kittler's arrest was a case of mistaken identity that might have been rectified if the police had turned over a fully-accurate report of the polygraph exam.

Kittler also alleges several problems with the arrest process in his case. For example, Kittler claims that Detective Thomas Coughlin ("Coughlin") claimed at the suppression hearing that a conversation with Rajkovich on March 27, 1997, after the Harvey interview, led Coughlin to go to Kittler's house to bring him to the police station. However, Kittler also alleges that since his trial he has discovered that Rajkovich was not at work on March 27, 1997. Kittler also alleges that Coughlin's

signature on his confession was forged and that Coughlin allegedly signed the confession hours after Coughlin had left work for the day.

Based on these claims of new evidence, among others, Kittler has brought an action pursuant to 42 U.S.C. § 1983 ("Section 1983") to seek redress for the alleged violation of his rights. In his amended complaint, Kittler asserts that he was unlawfully arrested (Count I), unlawfully detained (Count II), his confession was coerced (Count III), and that he was denied Due Process (Count IV). The City now moves for summary judgment on Count III, and the Detectives move for summary judgment on Counts II and IV.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325.

Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must consider the evidence as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. *Anderson*, 477 U.S. at 255.

## DISCUSSION

I. Defendant City of Chicago's Motion for Summary Judgment

The City of Chicago has moved to dismiss Kittler's Section 1983 coerced confession claim (Count III), asserting that the doctrine of collateral estoppel bars this claim. In general, federal courts, under 28 U.S.C. § 1738, must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so," even in Section 1983 actions. *Allen v. McCurry*, 449 U.S. 90, 96 (1980). This includes giving preclusive effect to decisions made in state suppression hearings and criminal trials. *LaBoy v. Zuley*, 747 F.Supp. 1284,

1286 (N.D.Ill. 1990). However, state court decisions are not subject to collateral estoppel in Section 1983 cases if "the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." *Allen,* 449 U.S. at 101.

Federal courts determining the preclusive effect of a state court decision must analyze the issue under that state's law. *Country Mut. Ins. Co. v. Duncan,* 794 F.2d 1211, 1214 (7th Cir. 1986). Under Illinois law, the party seeking to apply collateral estoppel must show: "(1) the issue decided in the prior action was identical to the one presented in the suit in question; (2) a court of competent jurisdiction rendered a final judgment on the merits in the prior action; (3) the party against whom the doctrine is asserted was a party to the prior action or in privity with such a party; and (4) the factual issue against which the doctrine is interposed has actually and necessarily been litigated and determined in the prior action." *LaSalle Bank Nat. Ass'n v. Village Of Bull Valley,* 826 N.E.2d 449, 456 (Ill. App. Ct. 2005). However, because collateral estoppel is an equitable doctrine, the party against whom the doctrine is used must be given a "full and fair opportunity" to litigate the issue, and "even where the threshold elements of the doctrine are satisfied, it will not be applied if an injustice would result." *Id.; Kmoch v. Klein,* 1996 WL 392163, at *3 (N.D. Ill. 1996).

In the instant action, the party against whom the doctrine is asserted, Kittler, is the same party who litigated the coercion issue in the state court. Second, Kittler is

claiming that his confession to the police was coerced, in violation of his Fifth Amendment rights. This is the same issue that was presented by Kittler to the state court judge in the pre-trial suppression hearing, and that was necessary for Kittler's conviction by the jury. Thus, the "identical issue" prong of the collateral estoppel doctrine is met. Third, the factual basis of Kittler's coerced confession claim is the same as he argued in the state courts, as required under the fourth prong of collateral estoppel. Kittler asserts that evidence was suppressed by the police before trial, including evidence that Kittler contends implicated another Eric in the polygraph meeting and certain problems with the arrest report. However, none of this new evidence has any bearing on whether Kittler's confession was voluntary. While Kittler contends that this evidence shows he was innocent of the crime to which he confessed, it has no bearing on whether the police actually engaged in coercive behavior. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986)(stating that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment"). Therefore, the City has met the fourth prong of the collateral estoppel doctrine.

The City has also met the third prong of collateral estoppel by showing that there was a final judgment on the merits. On appeal, Kittler failed to argue that his confession to the police was not voluntary. (City's SF Ex. G 27). Instead, his conviction was reversed on the grounds that the police lacked probable cause to

arrest him, and thus his statements to the police were tainted by the illegal arrest. The City argues that because the Illinois Appellate Court reversed Kittler's conviction on grounds other than the coerced confession claim, the trial court's determination regarding the confession stands and Kittler is now estopped from relitigating the issue.

Illinois courts have found that a ruling on a defendant's motion to suppress in a criminal trial has a preclusive effect on a later case. *See, e.g., People v. Owens*, 464 N.E.2d 252, 255 (Ill. 1984)(affirming lower court's ruling estopping inmate from arguing his confession should have been suppressed because the matter was decided in a motion to suppress hearing in the trial court); *People v. Miller*, 464 N.E.2d 1197, 1199 (Ill. App. Ct. 1984)(stating that "[i]t is well established in Illinois that a defendant may not repeatedly relitigate a pretrial motion to suppress" unless there is additional evidence or peculiar circumstances warranting reconsideration, but merely discovering a new argument is not sufficient). As stated above, Kittler has not alleged new evidence that would have a bearing on the issue of a coerced confession. Kittler also has not shown any "peculiar circumstances" that prevented a full and fair litigation of the coercion issue in the Illinois state courts, such as a lack of appellate review on the matter. *See People v. Mordican*, 356 N.E.2d 71, 73 (Ill. 1976)(stating that lack of an "opportunity to obtain a review of the correctness of [a] ruling" constituted a "peculiar circumstance" for purposes of collateral estoppel). Kittler had an opportunity to appeal the issue of coercion, but decided not to raise the issue.

Additionally, while the Seventh Circuit has stated that "a vacated judgment has no collateral estoppel or res judicata effect under Illinois law," *Pontarelli Limousine, Inc. v. City of Chicago*, 929 F.2d 339, 340 (7th Cir. 1991), the issue in *Pontarelli* is different than the one facing the court in the instant action. In *Pontarelli*, the court refused to give preclusive effect to the controlling issue from an earlier case that had been completely vacated. *Id.* Here, Kittler is seeking to relitigate the issue of coercion, which was one of several issues decided in the trial court but was not one of the issues raised or considered on appeal. Therefore, we find that Kittler had a full and fair opportunity to litigate the issue of a coerced confession and, thus, grant the City's motion for summary judgment on Count III.

## II. Detectives' Motion for Summary Judgment

Detectives move for summary judgment on Kittler's unlawful detention claim (Count II), asserting that it is not supported by the facts of this case. Detectives further move for summary judgment on Kittler's due process claim (Count IV), asserting that Kittler was not denied his right to a fair trial.

### A. Unlawful Detention Claim (Count II)

Detectives move for summary judgment on Kittler's Section 1983 unlawful detention claim, asserting that Kittler was properly detained because probable cause

had been established. Detectives alternatively argue that they are subject to qualified immunity in this case. To detain an individual following an arrest, "the Fourth Amendment requires a judicial determination of probable cause." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975); *Haywood v. City of Chicago*, 378 F.3d 714, 718 ( 7th Cir. 2004). The probable cause standard for detaining a suspect is the same as that for an arrest. *Gerstein*, 420 U.S. at 120. A fraudulent complaint, however, cannot be the sole basis for such a finding, and the judge must receive other evidence to support the probable cause finding. *See Haywood*, 378 F.3d at 719 (holding that fraudulent documents alone do not support a finding of probable cause).

In the instant action, Kittler asserts that he was unlawfully detained due to a lack of probable cause because Detectives based their claim of probable cause on a "forged arrest report." (Resp. 13). Kittler admits that Detectives also presented a criminal complaint to the magistrate, but asserts that the complaint only stated the allegations against Kittler in a conclusory fashion. (Resp. 13). Kittler alleges that only the arrest was "intended to serve [the] purpose" of establishing probable cause. (Resp. 13). Detectives acknowledge the holding in *Haywood*, but assert that summary judgment is proper because the arrest report was not the sole basis for a judicial finding of probable cause to detain. (Mot. 3). Detectives assert that Assistant State's Attorney Kent Sinson's approval of felony charges against Kittler and Detective Rolston's signed complaint against Kittler provided sufficient evidence for a judicial finding of probable cause to detain. (Mot. 4). Detectives also

deny that the arrest report was forged. (Reply 12). The undisputed facts in the instant action take this case out from under the control of *Haywood*. As stated above, *Haywood* involved a determination of probable cause based solely on a falsely sworn complaint. *Haywood*, 378 F.3d at 719. Given the fact that Kittler admits that the criminal complaints presented to the magistrate for the probable cause determination were not forged (Resp. 13), we find that Detectives did not violate Kittler's fourth amendment rights and grant Detectives' motion for summary judgment on Count II.

### B. Due Process Claim (Count IV)

Detectives also move for summary judgment on Kittler's Section 1983 claim regarding the alleged violation of his due process right to a fair trial. If a plaintiff can establish that prosecutors deliberately withheld material exculpatory evidence, thereby depriving him of his right to a fair trial under *Brady v. Maryland*, 373 U.S. 83 (1963), a constitutional claim exists under the due process clause. *Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001). This is true even in situations in which the police, not prosecutors, withhold exculpatory evidence. *United States v. Morris*, 80 F.3d 1151, 1169 (7th Cir. 1996). To establish a *Brady* claim, plaintiff must establish that: (1) "the evidence at issue [is] favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence [was] suppressed by the State, either willfully or inadvertently; and (3) prejudice [has] ensued." *Strickler v. Green*, 527 U.S. 263, 281-82 (1999). Speaking more generally, a *Brady* violation

exists when the evidence, taken as a whole, shows that there is a "reasonable probability" the suppressed evidence would have affected the outcome of the case. *United States v. Gillaum*, 372 F.3d 848, 858 (7th Cir. 2004).

In the instant action, Kittler actually cites *Crivens v. Roth*, 172 F.3d 991, 996-97 (7th Cir. 1999) and thus acknowledges that in regard to *Brady* violations, defendants cannot "cry foul if they, through a reasonable exercise of diligence, would have been able to obtain the evidence themselves." *Id.* Kittler argues however, that "police cannot intentionally mislead the defense about the availability of that evidence as writing false police reports about it." (Ans. Det. SJ 4). Kittler claims that in the instant action, "a reasonable jury could find that Defendants engaged in active concealment by creating false police reports, destroying evidence and perjuring themselves." (Ans. Det. SJ 4).

Rajkovich claims that he interrogated Harvey regarding the robbery and that during the interrogation, Harvey provided Rajkovich with the name of an "Eric" who lived at 5810 South Maplewood. Kittler claims that Rajkovich knew that the "Eric" referred to was in fact Eric Orr, who lived one block from 5810 South Maplewood. However, such a conclusion is nothing more than an unsupported accusation and Kittler has not pointed to sufficient evidence for a reasonable trier of fact to conclude that Rajkovich knew that "Eric" was in fact Eric Orr. Kittler also contends that Rajkovich specifically attempted to question Harvey about Eric Orr and thus acquired impeaching and exculpatory evidence that was favorable to Kittler. We do

not agree. There is no evidence showing that any such evidence obtained necessarily cleared Kittler from guilt and Kittler has not shown that any such evidence was impeaching or exculpatory. Kittler also contends that the report signed by Rajkovich was falsified, but has not pointed to any solid evidence that shows that this contention is true. Kittler has not pointed to sufficient evidence for a reasonable trier of fact to doubt Rajkovich's recitation of the Harvey interrogation and certainly has not pointed to evidence that shows an "active concealment" of evidence. Also, all the evidence pointed to by Kittler could and should have easily been obtained by his counsel prior to the state trial if his counsel had been diligent in his discovery efforts.

Kittler claims that Coughlin committed perjury while giving testimony at the suppression hearing. Kittler, in an effort to support his current civil rights claims, has delved into Police records to try to unearth every technicality he can find and piece them together to make it appear in hindsight as though there was relevant evidence concealed by Detectives. However, the court is not persuaded by Kittler's presentation, and the evidence Kittler alleges is nothing more than mere technical defects that do not support the inferences that Kittler seeks to draw in his favor. Kittler's entire case is built upon such unreasonable inferences and, once uncovered, it falls like a house of cards.

Kittler contends that Coughlin testified at the suppression hearing relating to a conversation Coughlin had with Rajkovich on March 27, 1997. Kittler has devoted

his discovery efforts in the instant action to checking the Detectives' work logs. Kittler claims to have discovered that the records show that Rajkovich did not work on March 27, 1997, and Kittler therefore claims that Coughlin committed perjury at the suppression hearing. This piece of evidence, even if true, is far from the "smoking gun" that Kittler portrays it to be. It is an enormous leap of logic from the information in the employment log to concluding that Coughlin committed perjury. For instance, the work record showing that Rajkovich was absent on March 27 may have been due to an error, or Rajkovich could have had a conversation with Coughlin on March 27 at work, despite the fact that Rajkovich was not officially on the clock. Also, Coughlin could have merely been confused as to the exact date of the conversation with Rajkovich. If Coughlin made such a mistake, he did not commit perjury. Completely absent is sufficient evidence to show that Coughlin knew or should have known that Rajkovich did not have a conversation with him on March 27 and showing that Coughlin lied on the stand. Kittler focuses merely on irrelevant technicalities and fails to present any logical argument that Coughlin committed perjury at the suppression hearing. Thus, Kittler's arguments are full of holes and are insufficient to enable a reasonable trier of fact to find in Kittler's favor.

Kittler also claims that there were various pieces of evidence that showed the actual suspect was Eric Orr, rather than Kittler. Such arguments are based upon hindsight and supposition on Kittler's part. Kittler overstates the meaning of the evidence at issue, and accuses Detectives of attempting to minimize the impact of

the evidence relating to Eric Orr. (Ans. D SJ 7). However, in actuality, it is Kittler who is clearly *overemphasizing* the impact and meaning of such evidence. Kittler's arguments are nothing more than his opinion concerning the evidence based upon his biased perspective. Kittler now claims that if he were in Detectives' place, Kittler would have known the suspect was Eric Orr. While this may be Kittler's opinion, no reasonable trier of fact could agree with Kittler. Additionally, Kittler's trial counsel could have discovered this evidence, which Kittler now complains was concealed from him.

Kittler, again looking for any sort of technical inaccuracy, claims that the arrest report, signed by Coughlin, was a forgery. Kittler contends that Coughlin left work for the night before the report was signed and that the other officers forged Coughlin's signature on the arrest report. However, Kittler must do more than rely on mere speculation at this juncture and the record as a whole does not support his theory that Coughlin's signature on the arrest report was forged. Again Kittler seeks to draw unreasonable inferences that run far afield from the minor defects that he has found during the fishing expeditions that he has engaged in during discovery. Kittler has not pointed to sufficient evidence for a reasonable trier of fact to conclude that the arrest report was forged or that such evidence was concealed from him by Detectives. The immaterial defects that he now harps on could easily have been discovered had Kittler's trial counsel exercised due diligence. Kittler also claims that Detectives concealed certain evidence regarding the nature of their

conversations with informant Steve Riley but, again, Kittler has failed to point to sufficient evidence for a reasonable trier of fact to conclude that such evidence was exculpatory, was the type of evidence that should have been disclosed, or that his trial counsel could not have obtained such evidence. Therefore, we grant Detectives' motion for summary judgment on the due process claim. Defendants' motion to strike the statements is denied as moot.

## CONCLUSION

Based on the foregoing analysis, we grant the City's motion for summary judgment on the coerced confession claim (Count III), and grant Detectives' motion for summary judgment on the unlawful detention and due process claims (Counts II and IV). We also deny Defendants' motion to strike as moot.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: January 5, 2006